## FEDERAL RESERVE BANK OF SAN FRANCISCO v. PACIFIC GRAIN CO.

(District Court, D. Oregon. November 17, 1924.)

No. 8658.

1. Corporations ⇐464 — Corporation held to have power to indorse for another, which it controlled.

The general rule that a corporation is without power to indorse for another *held* not applicable, where the indorsing corporation owned 70 per cent. of the stock of the other, the two had a common president and interlocking directorates, and were associated in the transactions out of which the debt arose.

2. Corporations ⇐464 — Contract to indorse notes of another corporation held valid and enforceable.

An offer by a corporation to indorse notes of another corporation, held by a bank, "on the understanding that arrangements can be made for a further extension or renewal," *held* to have become a binding and enforceable contract, where there had been previous negotiations, the notes were then overdue, and the bank had refrained and continued to refrain in consideration of the offer from enforcing payment, and where a subsequent repudiation of the offer by the corporation made it impossible to agree on terms of extension or renewal.

In Equity. Suit by the Federal Reserve Bank of San Francisco against the Pacific Grain Company. Decree for complainant.

Albert C. Agnew, of San Francisco, Cal., and Wood, Montague & Matthiessen, of Portland, Or., for plaintiff.

Dolph, Mallory, Simon & Gearin and Edgar Freed, all of Portland, Or., for defendant.

WOLVERTON, District Judge. At the time of the transactions hereinafter noted, the Federal Reserve Bank of San Francisco (to be, for convenience, called the bank) was the holder, by indorsement of McCornick & Co., Bankers, of three promissory notes, aggregating $40,000, of which Inter-Mountain Milling Company was the maker, bearing date, respectively, February 28, March 7, and March 9, 1921. The Pacific Grain Company, by J. E. MacAlpine, its authorized agent, wrote the Federal Reserve Bank, Salt Lake City, Utah, as follows:

"Salt Lake City, Utah, June 17, 1921.

"Federal Reserve Bank, Salt Lake City, Utah—Gentlemen: In conformity with arrangements made on all of the outstanding paper of the Inter-Mountain Milling Company, held by other banks, we will state to you that, in consideration of your extending note you hold of $40,000 for a period of 30 days from date, we will at the expiration of that time indorse the paper on the understanding that arrangements can be made for a further extension or renewal.

"Yours truly,
"Pacific Grain Company,
"By J. E. MacAlpine, Agt."

The proposition couched in the letter was made in pursuance of previous conversations between the writer and Louis H. Moore, who at the time was the authorized collecting agent of the bank; that is, the Federal Reserve Bank of San Francisco.

At this time the Grain Company was the owner of 70 per cent. of the stock of the Milling Company. The two companies had interlocking directorates; that is to say, three members of the board of directors of the Grain Company, who were owners of qualifying shares in the Milling Company, were also directors of the latter company, and constituted a majority of the board. Hoben was secretary of the Grain Company, and Kennedy of the Milling Company. Draper was president of both concerns. The dealings between the two companies in respect to the transactions relating to the sale of grain out of which the debt in suit arose—that is, the total during the season—amounted to a very large sum of money. Mr. Max Houser was the principal owner of the Grain Company, and Kennedy was his confidential employee, and handled business more or less for the Grain Company.

At about the same date as the proposition by MacAlpine, agent, was made for an indorsement of the bank's paper, the Grain Company, through Kennedy, procured a renewal of the Milling Company's note with Walker Bros., Bankers, and further endeavored to secure a loan of a large sum on the Milling Company's properties. So it may be said that there was then existing an interrelation between the two companies respecting their business organization and affairs. In the meantime the Milling Company has gone into the hands of a receiver, through voluntary liquidation, and the Grain Company has presented to the receiver for payment its claim for a large sum, which claim is being held by the receiver in process of inquiry whether to allow or disallow the same.

The instant suit is one to compel specific performance on the part of the Grain Company, in that it be required to indorse the bank's paper, and be held to liability thereon, and to restrain it from disposing of its claim against the Milling Company, and for further relief.

[1] The first contention of the defendant is that it has not been shown that the Grain Company had such an interest in the Milling Company as to take the case out of the rule that one corporation cannot indorse paper for another. I am of the view, however, that the application of the rule is obviated under the facts appearing in the foregoing statement.

[2] The next question arising is, as it is pertinently stated by counsel for the defendant: "Did the Pacific Grain Company contract to indorse the notes?" This leads to an examination of the letter, or it might otherwise be termed the proposition or offer of June 17th. The pertinent context is: "That, in consideration of your extending note you hold of $40,000 for a period of 30 days from date, we will at the expiration of that time indorse the paper on the understanding that arrangements can be made for a further extension or renewal."

Let us analyze the paper, as far as is essential. The last clause, namely, "on the understanding," etc., is somewhat ambiguous. If read as a proviso (of which it has some of the earmarks), it would seem to render the proposition clearer, and there is some indication from evidence aliunde that such was the understanding. Moore, the

collecting agent for the Reserve Bank, had previously had a conference with MacAlpine with respect to the Milling Company's obligations then held by the bank, and touching which the bank was desirous of obtaining the indorsement of the Grain Company. The financial condition of the Milling Company was more than likely in the minds of the agents at the time, and the interlocking relations of the two companies were probably understood by both such agents. Further, it appears that about the same time that the proposition was made for indorsement by agent MacAlpine, namely, June 17, 1921, the Grain Company arranged with Walker Bros., Bankers, at Salt Lake City, for a renewal of a note of the Milling Company.

These matters of evidence throw some light upon what was meant by the words "further extension or renewal." Evidently "extension" pertained to an act that required the assent of the bank, while "renewal" is referable to an act that could be performed only by the Milling Company; it being the maker of the notes held by the bank. So that, read in the light of the evidence, the indorsement was to be made provided "arrangements can be made" for an extension on the part of the bank, or a renewal on the part of the Milling Company. In either event, if accomplished, the Grain Company was to indorse.

But, however it may be, whether we treat the clause as a proviso or adhere to the literal, it is clear that it was contemplated' that there should be an accord between the parties pertaining to a further extension or renewal as a condition to the indorsement of the notes by the Grain Company.

The consideration for the proposition was an extension of time for payment of the notes. The notes became due May 29th, June 5th, and June 7th, respectively, and the bank was already extending grace when the proposition was made June 17th, and thence continued to refrain from enforcing payment of the obligations. The act of the bank in thus continuing to refrain from enforcing the obligations was a sufficient consideration on its part for sustaining the proposition.

It is argued that the proposition was never accepted by the bank, and therefore failed as an agreement between the parties. But the very act which supplied the consideration was also the equivalent of an acceptance of the proposition on the part of the bank, and it then became an agreement to be fulfilled by the parties according to its terms and conditions. It is quite apparent that the proposition put in writing was but a confirmation of the understanding touching the matter that was previously reached orally.

The question of larger difficulty arises in view of the stipulation for indorsement of the paper. It includes and contemplates an arrangement for further extension or renewal, which involves the element of time, and this, from the very nature of things, is necessarily to be arrived at as a condition to the indorsement; that is to say, a further agreement as to the time the obligations were to run is within the intendment of the stipulation, and that is essentially a prerequisite to the requirement for indorsement.

Further reference to the correspondence of the parties will be helpful. On June 21, 1921, the Grain Company, by J. P. Hoben, secretary, wrote the Federal Reserve Bank of Salt Lake City, confirming the authority of MacAlpine to sign the letter. On August 8th following, Moore, the collecting agent, addressed to the Grain Company an inquiry touching what action it expected to take respecting the letter of the 17th. On August 12th the Grain Company made reply, addressed to the Salt Lake City Bank, as follows:

"We have your letter of August 8th, and wish to state that we have been endeavoring to arrive at some definite conclusion regarding the affairs of the Inter-Mountain Milling Company. A meeting is to be held next week, and at that time we hope to be able to advise you just what can be done in the matter, but will say at this time that the outlook is not promising."

On September 15th Moore directed a letter to the Grain Company requesting that it fulfill its agreement to indorse the paper, and advising that he was sending it to the Portland Branch Bank, so as to make it available for that purpose. The Branch Bank notified the Grain Company that it had the paper, and sought to know the company's attitude with respect to indorsement of it, and was referred, first to Kennedy, and then to Malpas, chairman of a bankers' committee which at the time had the affairs of the Grain Company in charge, and finally to Houser, who repudiated all authority of any one for writing the letter agreeing to indorse the obligations held by the bank, and stated that, so far as he felt, there existed no legal or moral obligation on the part of the Grain Company to indorse the paper. This leads to no other re-

sult than an absolute repudiation on the part of the Grain Company of all contract or agreement to indorse.

The bank stood ready at all times to meet the stipulations of the proposition, but without avail. Had the Grain Company entertained the thought of conferring with the bank for making an agreement as to the time of extension, and stood willing to agree to a reasonable time in that particular, the bank would have been required to yield in order to meet the condition of the proposition or offer, whatever it may be called. But the Grain Company having flatly repudiated the proposition, the bank was under no further obligations to insist upon reaching an agreement as to the time of extension, and its only remedy left was to seek specific performance. The Grain Company could not repudiate its entire obligation · and thus rid itself of all attempt to come to an agreement with the bank respecting the time the paper should run when indorsed. Having repudiated, and thus refused concord with the bank as to the time of extension, it cannot thereby defeat the right of the bank to insist upon specific performance.

A decree will be entered requiring the Grain Company to indorse the notes of the Milling Company, that the bank recover from the Grain Company the balance due upon such paper according to the terms thereof, that the Grain Company be restrained from disposing of the proceeds of its claim against the Milling Company, as prayed, and that the bank have its costs and disbursements.